**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Green Party, et al., | No. CV-14-00375-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Ken Bennett, | |
| Defendant. | |

Plaintiffs Arizona Green Party and Claudia Ellquist filed a complaint against Arizona Secretary of State Ken Bennett challenging the constitutionality of an Arizona election statute (Doc. 1). The parties filed cross-motions for summary judgment (Docs. 15 and 17) and orally argued their motions on May 7, 2014. For the following reasons, Plaintiffs' motion will be denied and Defendant's motion granted.

I.   **BACKGROUND**

Plaintiffs want the Green Party on the ballot for the 2014 election. As explained below, state election law requires the Green Party to have filed a new party petition by February 27, 2014, 180 days before the primary election. On February 25, 2014, Plaintiffs sued the Secretary, alleging that A.R.S. § 16-803, mandating the February deadline, is unconstitutional. Specifically, they alleged, "The challenged statute represents a direct restraint on Plaintiffs' political speech and severely burdens the political speech, political

1    association rights, and voting rights of Plaintiffs, in violation of the First and Fourteenth
2    Amendments to the United States Constitution, and 42 U.S.C. § 1983."

3         In Arizona, the Green Party last qualified for ballot recognition in 2010.  Doc. 16
4    ¶ 23.   At the time, state law required political parties to meet one of two statutory
5    obligations in each successive election cycle to remain on the ballot: Registered party
6    members must (1) cast 5 percent of the total votes cast for governor or presidential electors
7    or (2) compose two-thirds of 1 percent of the total registered electors in the jurisdiction.
8    A.R.S. § 16-804(A)–(B).   In 2011, the Arizona legislature amended its election law to
9    entitle newly qualified parties to representation on the ballot "through the next two
10   regularly scheduled general elections for federal office immediately following
11   recognition . . . ."  *Id.* § 16-801(B).  The Secretary agreed to apply amended A.R.S. § 16-
12   801 to the Green Party and extended ballot representation through the 2012 election cycle
13   based on its 2010 recognition.

14        In the 2010 gubernatorial election, however, Green Party members failed to cast 5
15   percent of the total votes.  Similarly, they failed to establish enough registered voters as of
16   October 1, 2013, to remain on the ballot for the 2014 election cycle.  Doc. 16 ¶¶ 26–27.
17   Thus, on November 20, 2013, the Secretary announced that the Party had lost its
18   recognized status.  *Id.* ¶ 28.  As in 2010, it would have to qualify as a new political party
19   for purposes of the 2014 election cycle.

20        To qualify, the Green Party needed to file a petition with the Secretary meeting
21   statutory requirements.  A.R.S. § 16-801(A) requires the petition to bear the signatures "of
22   qualified electors equal to not less than one and one-third per cent of the total votes cast for
23   governor at the last preceding general election at which a governor was elected."  Section
24   16-803(A) requires the parties to file the petition with the Secretary "not less than one
25   hundred eighty days before the primary election for which the party seeks recognition."
26   Thus, the Green Party's petition needed to include 23,401 signatures and be submitted to
27   the Secretary by February 27, 2014.  The Party never filed such a petition.

28

1    In 2011 and 2012, the state legislature also amended the procedure for the Secretary
2    and the county recorders with respect to new party recognition.  Doc. 16 ¶ 5.  Prior to the
3    amendments, new parties filed petitions with each county.  The pre-amended statute
4    required each county recorder to verify all the signatures submitted within 30 days.  *Id.* ¶ 8.
5    Once verified, the petitions were submitted to the Secretary at least 140 days prior to the
6    primary for certification.  *Id.* ¶ 6.

7    The 2011 and 2012 amendments increased the burden on the Secretary and
8    decreased the burden on individual counties.  *Id.* ¶ 5.  Section 16-803 now requires the
9    Secretary to do the following within seven business days of receiving new party petitions:

10    a.    Determine the county of the majority of the signers for each
11    sheet, identify the county of majority, eliminate all signatures from counties
      other than the majority county, and group all of [the] signature sheets by
12    county.

13    b.    Remove all signatures from eligibility for verification where
      the signature is missing, the residence address or description of residence
14    location is missing, or where the date on which the petitioner signed is
      missing.

15    c.    Count the number of signatures for verification on the
16    remaining petition sheets and note the number of eligible signatures on each
17    sheet above the majority county designation.

      d.    Number the remaining petition sheets in consecutive order.
18
19    e.    Count all remaining petition sheets and signatures not
      previously removed and issue a receipt to the applicant of this total number
20    eligible for verification.  If the number of eligible signatures is below the
      minimum number required, the process ends here.

21    f.    Select a random twenty percent sample of the eligible
22    signatures.

23    g.    Transmit copies of the selected signatures and petition sheets
      to the appropriate county recorders for verification within ten business days
24    of receipt.

25    *Id.* ¶ 18; *see also* A.R.S. § 16-803(B)–(G).  Once the county recorders certify the signature
26    sheets, within 72 hours the Secretary must total the valid signatures "to determine the
27    percentage of valid signatures in the sample, and then calculate the projected number of
28    valid signatures submitted by the applicant."  Doc. 16 ¶ 20; *see also* A.R.S. § 16-803(H).

1    If the total meets the minimum required by § 16-801(A), the party is recognized.  A.R.S.

2    § 16-803(I).  Thus, the sufficiency of the signatures must be determined within four weeks

3    of filing, which also provides a modest buffer for any litigation arising therefrom.

4         This new procedure more closely parallels the process used for initiative,

5    referendum, and recall petitions.  Doc. 16 ¶ 5.  Although the amendments shift the burden

6    from the counties to the Secretary, they did not alter the formula for calculating the number

7    of required signatures; nor did they change the 180-day deadline for filing the petitions.

8    No party has yet to apply for recognition under the new procedures.  *Id.* ¶ 19.  In previous

9    years, however, both the Americans Elect Party and the Green Party have satisfied the

10   statutory requirements—including the 180-day deadline—and obtained new party

11   recognition.  *Id.* ¶¶ 23, 44.

12        The 180-day deadline is tied to the primary election.  In 2009, the state legislature

13   moved the primary ten weeks ahead of the general election.  *Id.* ¶ 29.  This allowed more

14   time to complete the following tasks between the primary and general elections: processing

15   provisional and early ballots, conducting hand counts, audits, recounts, or contests,

16   canvassing the election results, issuing certificates of nomination, creating the general

17   election database, preparing general election ballots, including translations, programming

18   and testing equipment, and issuing early ballots.  *Id.* ¶ 41.

19        The Court takes judicial notice that Arizona's 2014 primary election will occur on

20   August 26, 2014.  The state has offered undisputed evidence that the following tasks must

21   be completed before that time, as required by statute:

22        • By March 1, 2014, calculate candidate signature requirements as required by

23            A.R.S. § 16-322(B).  "This is the minimum number of signatures a person must

24            obtain in order to qualify for the primary election or in order to qualify as a

25            candidate for nomination other than by primary."  *Id.* ¶ 31.

26        • Between April 28 and May 28, 2014, candidates for the primary ballot and

27            independents seeking nomination apart from a primary must file nominating

28            petitions as required by A.R.S. § 16-311(A) (requiring filing "not less than ninety

- 4 -

nor more than one hundred twenty days before the primary election") and § 16-341(C). *Id.* ¶ 33.

- By May 28, 2014, county recorders must mail notification to eligible voters on the permanent early voting list and inform voters how to designate a political party ballot if they are not members of a party that is recognized for the primary as required by A.R.S. § 16-544(D) (requiring notifications mailed "[n]ot less than ninety days before any polling place election scheduled in March or August"). *Id.* ¶ 35.

- By June 11, 2014, electors must file any actions challenging a nomination as required by A.R.S. § 16-351(A). *Id.* ¶ 37.

- By July 12, 2014, county recorders must mail ballots to uniformed services and overseas voters as required by A.R.S. § 16-543(A) (requiring ballots to "be transmitted no later than the forty-fifth day before the election"). This requires counties to finalize ballots with their printers by June 27, 2014. *Id.* ¶ 38.

- On July 24, 2014, testing begins on electronic ballot tabulating systems. "Testing must be done within seven days of the beginning of early voting, and ten business days prior to election day," as required by A.R.S. § 16-449(A). *Id.* ¶ 39.

- On July 31, 2013, early voting begins as required by A.R.S. § 16-542(C) (requiring early ballots requested thirty days before the election to be "distributed on the twenty-sixth day before the election") and A.R.S. § 16-544(F) (same deadline for mailing early ballots to eligible voters on the permanent early voting list). *Id.* ¶ 40.

## II.    LEGAL STANDARD

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence shows there is no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On motions for summary judgment, the nonmoving party's evidence is presumed true, and all inferences from the evidence are

1  drawn in the light most favorable to the nonmoving party.  *Eisenberg v. Ins. Co. of North*
2  *America*, 815 F.2d 1285, 1289 (9th Cir. 1987); *Baldwin v. Trailer Inns, Inc.*, 266 F.3d
3  1104, 1117 (9th Cir. 2001).  "The court need consider only the cited materials, but it may
4  consider other materials in the record," Fed. R. Civ. P. 56(c)(3), as long as the evidence is
5  admissible or can be produced in admissible form.  *See* Fed. R. Civ. P. 56(c)(2).
6  Conclusory and speculative testimony in affidavits and moving papers is insufficient to
7  raise genuine issues of fact and to defeat summary judgment.  *Thornhill Publ'g Co., Inc. v.*
8  *GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

9       Here, Plaintiffs have offered no evidence, and thus none to controvert the material
10  facts presented by Defendant.  The evidence then, including the timeline above, is not in
11  dispute.  The question is whether on those facts either party is entitled to judgment as a
12  matter of law.

13

14  **III.   ANALYSIS**

15       In regulating its elections, Arizona "has the undoubted right to require candidates to
16  make a preliminary showing of substantial support in order to qualify for a place on the
17  ballot, because it is both wasteful and confusing to encumber the ballot with the names of
18  frivolous candidates."  *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983); *see also*
19  *Kannarr v. Hardy*, 118 Ariz. 224, 225, 575 P.2d 1250, 1251 (1978) (noting that the U.S.
20  Supreme Court had upheld "[s]tatutes requiring a showing of a minimum amount of
21  support for a political party before allowing the party to have or continue official status on
22  the ballot").  This right trades off, however, with the "tendency of ballot access restrictions
23  to limit the field of candidates from which voters might choose."  *Anderson*, 460 U.S. at
24  786 (quotation marks omitted).  Here, Plaintiffs challenge the balance Arizona strikes with
25  its 180-day filing deadline.

26       "[W]hen an election law is challenged, its validity depends on the severity of the
27  burden it imposes on the exercise of constitutional rights and the strength of the state
28  interests it serves."  *Nader v. Brewer*, 531 F.3d 1028, 1034 (9th Cir. 2008).  "If the burden

is severe, the challenged procedures will pass muster only if they are narrowly tailored to achieve a compelling state interest.  If the burden is slight, the procedures will survive review as long as they have a rational basis." *Libertarian Party of Wash. v. Munro*, 31 F.3d 759, 761 (9th Cir. 1994) (citation omitted).  Importantly, "the mere fact that a State's system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny.'" *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)).  The standard is more "flexible."  *Id.* at 434.  Indeed, "when a state election law provision imposes only reasonable, nondiscriminatory restrictions . . . , the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* (quotation marks omitted).

The Green Party must demonstrate that the statute imposes a severe burden.  *Munro*, 31 F.3d at 762.  The ballot access requirements impose a severe burden if, taken together, they "seriously restrict the availability of political opportunity." *Id.*  "The question is whether 'reasonably diligent' minor party candidates can normally gain a place on the ballot, or if instead they only rarely will succeed." *Id.*

Plaintiffs have not made this initial showing.  They made the following allegations in their complaint:

- They would not be able to collect sufficient signatures by February 27, 2014.
- The petition requirements "are so onerous for third parties such as the Arizona Green Party that they must begin each campaign to regain ballot status immediately following the conclusion of the previous election cycle."
- The February deadline "can greatly increase the costs minor parties incur collecting the required number of signatures for their qualifying petitions."
- The February deadline is "not designed to allow a reasonabl[y] diligent minor party organization to qualify for ballot access."
- "Requiring minority political parties to gather signatures on their petitions so early, when the mind of the general public and the attention of the media is not focused on the general elections, i[s] unduly burdensome."

Doc. 1 at 4.  Critically, however, Plaintiffs never offered any evidence to support these assertions.  For example, Plaintiffs have offered nothing to prove their allegation that the February deadline *can* increase the costs to minor political parties.  More importantly, they have not offered any evidence that here the February deadline *did* increase Plaintiffs' costs.  Further, the 180-day deadline is fifteen years old.  Doc. 15 at 12.  Although the legislature has amended the statutes recently to shift some of the burden from the counties to the Secretary, Doc. 16 at 2, as noted above both the pre-amended and post-amended scheme required petitioning parties to file 180 days before the primary.  Doc. 15  at 12.  But Plaintiffs have not offered any evidence that the early deadline has ever precluded another minor party from qualifying.  *See Munro*, 31 F.3d at 763 ("In fact, the Libertarians cite no instance in which any candidate ever has been denied access to the Washington ballot, or otherwise has been disadvantaged, because of the procedures they assail.").  Plaintiffs cite to the perils of early filing deadlines in general, but they offer no evidence demonstrating that Arizona's deadline imposes any particular hardship—let alone a severe burden—on Green Party supporters or other minor parties.  *Cf. Anderson*, 460 U.S. at 788 n.9 ("We have upheld generally-applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself.").

The Secretary's evidence suggests the opposite.  Despite the fifteen-year-old, 180-day deadline, the Green Party qualified in 2008 when the deadline fell in early March and again in 2010 when the deadline fell in late February.[1]  Moreover, the Americans Elect Party qualified in 2011 also under the February deadline.  Doc. 16 ¶¶ 10–13, 44–45; Doc. 21 at 5.  Although it is not dispositive that two minor parties have recently qualified, *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 592 (6th Cir. 2006) ("[T]he fact that an election procedure can be met does not mean the burden imposed is not severe."), historical evidence of ballot access cuts against Plaintiffs' unsupported and conclusory

---

[1] The Green Party received a court-ordered two-week extension for gathering signatures in 2010 because of the mid–election cycle change in the primary date and thus the petition deadline (from early March to late February).  Doc. 21 at 5.  There has been no such change in the deadline during this election cycle.

allegations of severe burden.  *Cf. Nader*, 531 F.3d at 1038 (noting that no independent presidential candidate had appeared on Arizona's ballot since the state changed its relevant filing deadline fifteen years earlier, "suggest[ing] that the regulations impose[d] a severe burden that ha[d] impeded ballot access").  Whatever burden the election scheme imposes, the challenged provision has not prevented two third parties from accessing the ballot.

At bottom, Plaintiffs' argument is this: As a general matter, early deadlines burden supporters of minor parties.  Further, other courts have struck down earlier deadlines for party petitions and candidate filings.  *See Anderson*, 460 U.S. 780 (invalidating March filing deadline for independent presidential candidate to get on Ohio ballot); *Nader*, 531 F.3d 1028 (invalidating Arizona's 90-day filing deadline for nomination petitions for independent candidates); *Blackwell*, 462 F.3d 579 (invalidating 120-day petition deadline); *McClain v. Meier*, 637 F.2d 1159 (8th Cir. 1980) (invalidating June 1 deadline for newly qualifying parties, 90 days before primary election); *MacBride v. Exon*, 558 F.2d 443 (8th Cir. 1977) (invalidating February 11 deadline); *Libertarian Party of Tenn. v. Goins*, 793 F. Supp. 2d 1064 (M.D. Tenn. 2010) (invalidating March deadline for newly qualifying parties, 120 days before primary); *Citizens to Establish a Reform Party in Ark. v. Priest*, 970 F. Supp. 690 (E.D. Ark. 1996) (invalidating January 2 deadline); *Libertarian Party of Ky. v. Ehrler*, 776 F. Supp. 1200 (E.D.Ky. 1991) (invalidating January deadline, 119 days before the primary); *Cripps v. Seneca Cnty. Bd. of Elections*, 629 F. Supp. 1335 (N.D. Ohio 1985) (invalidating February deadline for independent candidates, 75 days before the primary).  Therefore, Plaintiffs argue, Arizona's deadline must also be unconstitutional.

As an initial matter, cases involving deadlines for presidential nominations implicate only general elections and rationally need not long precede primary elections.  More importantly, challenges to election laws are context dependent.  *Cf. Burdick*, 504 U.S. at 434 (admonishing courts to weigh asserted injuries against the state's interests, considering "the extent to which those interests make it necessary to burden the plaintiff's rights") (quoting *Anderson*, 460 U.S. at 789).  Plaintiffs have not demonstrated that a 180-day deadline alone, considered outside the context of the election cycle requiring it,

necessarily imposes a severe burden.   And they have not offered evidence—or even alleged—that the other interrelated provisions governing the election cycle impose a severe burden.   Indeed, Plaintiffs expressly disclaimed any challenge to the other statutory requirements and time frames at oral argument.   Finally, they have pointed to no case holding that an early filing deadline is automatically invalid.

Plaintiffs' very general argument, completely unsupported by evidence, is insufficient to show that the burden imposed on Arizona voters is severe.   Consequently, Plaintiffs must demonstrate that the state's 180-day deadline has no rational basis.   *Munro*, 31 F.3d at 761, 763.   They have not done so.   They have not offered evidence, for example, that there is slack within the cycle.   Indeed, even setting aside factual deficiencies, Plaintiffs' response makes no attempt to engage the election timeline warranting the February deadline, which the Secretary elucidated and defended in his motion.   Plaintiffs' assertion that "there are other less restrictive and expensive options that the Defendants seem to ignore," Doc. 22 at 6, is insufficient:

> The Libertarians contend that the state could streamline its system and verify signatures in a shorter period of time.   No doubt this is true.   But, because the current scheme poses only a minuscule burden for minor party candidacies, the Constitution does not require Washington to adopt a system that is the most efficient possible; it need only adopt a system that is rationally related to achieving its goals.

*Munro*, 31 F.3d at 764.   It is also insufficient to assert, as Plaintiffs did at oral argument, that the state could simply allow the Green Party to use a nominating convention rather than a primary (and thus avoid the allegedly burdensome statutory scheme attending the primary).   Plaintiffs did not brief this argument.   In any event, Arizona's interest in utilizing a primary outweighs Plaintiffs' desire for an alternative procedure.   The Supreme Court "has numerous times stated that it is 'too plain for argument' that 'a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion.'"   *Alaskan Independence Party v. Alaska*, 545 F.3d 1173, 1178 (9th Cir. 2008) (quoting *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000)); *see also id.* ("[T]he State's interest in enhancing the

1    democratic character of the election process overrides whatever interest the Party has in

2    designing its own rules for nominating candidates, such as its desire to nominate through

3    party-run convention.") (quotation marks omitted).[2]

4          The state has provided ample evidence that its deadline serves a self-evidently

5    important regulatory interest: the "orderly administration of the election processes."

6    Doc. 21 at 8.  *Cf. Burdick*, 504 U.S. at 433 ("Common sense, as well as constitutional law,

7    compels the conclusion that government must play an active role in structuring elections;

8    as a practical matter, there must be a substantial regulation of elections if they are to be fair

9    and honest and if some sort of order, rather than chaos, is to accompany the democratic

10   processes.") (quotation marks omitted).   As detailed above, the Secretary has offered

11   uncontroverted evidence that he and the county recorders face a number of interrelated

12   deadlines imposed by the state legislature, each requiring time to complete and each

13   succeeding other prerequisite deadlines.   There is no evidence that the impositions are

14   unnecessary, excessive, or discriminatory.    And Plaintiffs conceded they were not

15   challenging this statutory election scheme as a whole or, indeed, challenging anything

16   other than the February deadline for filing petitions.  Especially if the other deadlines and

17   requirements are assumed constitutional, and given the state's uncontroverted evidence

18   concerning the interplay between the February deadline and its election scheme as a whole,

19   A.R.S. § 16-803 rationally accommodates the state's administrative needs.   *See Nader*,

20   531 F.3d at 1035 ("[A] state's important regulatory interests are usually sufficient to justify

21   election regulations that impose lesser burdens.") (quotation marks omitted).  Indeed, the

22   fit is tight between A.R.S. § 16-803 and those unchallenged needs.

23

24

25          _____

26          [2] Plaintiffs advanced another potential solution at oral argument: Allow the Green
     Party more time to collect signatures and less time for Green Party candidates
     subsequently to seek ballot access for the primary.  Whatever other problems attend this
27   proposal, it would facially discriminate by creating one track to the ballot for the Green
     Party and another for all other parties' candidates.  In any event, the argument was not
28   briefed, and it was too late to bring up for the first time at oral argument.  The Secretary
     could not fairly respond to it.

## IV.    POSTSCRIPT

At oral argument, Plaintiffs displayed petition sheets said to contain more than 27,000 signatures.  Plaintiffs had not filed those signatures with the Secretary, nor did they explain their failure to file.  Because A.R.S. § 16-803(A) does not set an outside limit on when parties may submit a petition, there is nothing preventing the Green Party from filing their petition and gaining access to the ballot for 2016 if the signatures prove sufficient, just as it did in 2008 and 2010.

IT IS THEREFORE ORDERED denying Plaintiffs' Motion for Summary Judgment (Doc. 17).

IT IS FURTHER ORDERED granting Defendant's Motion for Summary Judgment (Doc. 15).  The Clerk shall enter judgment in favor of Defendant and that Plaintiffs take nothing.

Dated this 16th day of May, 2014.

_____
Neil V. Wake
United States District Judge